Good morning, Your Honors, and may it please the Court. Matt McGuire on behalf of Appellant National Veterans Legal Services Program, or NVLSP for short. The District Court erroneously dismissed NVLSP's complaint in this case because it wrongly found, one, that NVLSP lacked standing under Article III, and two, that NVLSP had not alleged an agency action reviewable under the APA. The District Court's errors on both prongs of the analysis are fundamental, and they flow directly from the District Court's failure to properly identify the claims that NVLSP brought in its complaint. Specifically, NVLSP had two potential claims to bring under the APA. The first bucket of claims would be where the government completely fails to comply with a mandatory and discreet legal obligation. The second type of claim would be where the government has taken too long or unreasonably delayed in complying with its mandatory and discreet legal obligations. Both types of claims are actionable under the APA, but NVLSP alleged the first one, and that's what makes this a relatively straightforward case. On January 2, 2020, when the complaint was filed and the allegations in the complaint were laid out, not a single decision of the boards was available publicly on a centralized Internet website that would allow NVLSP or others to isolate cases of interest. That set of facts is what makes both the standing analysis and the agency action analysis relatively straightforward. With respect to standing, NVLSP's allegations fully satisfied the standard for an informational injury articulated by the U.S. Supreme Court in FEC v. Aikens, Public Citizen v. United States Department of Justice, and this court's decision in Dreher. This court and the Supreme Court have consistently held that a plaintiff suffers an injury in fact when it's denied information that must be disclosed to it pursuant to a statute. To show informational injury, NVLSP needed to allege as follows. One, that it lacked access to information to which it was legally entitled, and two, that the lack of access to the information created a real harm with an adverse effect. And both pieces of that analysis are satisfied in the complaint filed in this case. On the first prong, NVLSP alleged that 10 U.S.C. 1552A5, 32 CFR 70.8L, DOD directives, and DOD instructions all gave NVLSP the right to access the board's final decisions in the manner it alleged. And on the second prong, NVLSP detailed how it relies on its ability to access those decisions and how it's clear. Were you denied the information? Because the information, as I understand it, was always available on a specific request. And correct me if I'm wrong, but I don't remember your identifying any particular request that was actually denied. And in light of the fact that we don't know that any request was denied, and apparently you were able to get the information you wanted on a specific request, is there really a deprivation here? Judge Wilkinson, I have several responses to that. The first being that there is no allegation by NVLSP that it had the ability to obtain that information through a specific request. And I think that's critical, Your Honor, because that's a fact that the government is trying to bring into this case at the motion to dismiss stage. And we raised in our briefs and below that if they wanted to have a factual challenge to stand it, that our claims are not true in the complaint, that we could have gotten this information through a specific request, then we should have had a hearing, or at least the district court should have considered the declarations put in related to the preliminary injunction and reviewing the accuracy of that information. Because my second answer, Your Honor, is that that is not true from NVLSP's perspective. As the declaration around JA4547 shows, NVLSP was unaware that it could make a specific request, that its specific request would not have solved its injury in this case, because NVLSP looks at the full body of decisions to provide a resource manual and other resources to veterans advocates and veterans themselves. So it's not as if they know we want exactly this decision. And there are also declarations that were submitted around the preliminary injunction showing that the department's workaround process that they rely so heavily on didn't work. Well, you're going to have access to the body of decisions, just not as quickly as you want. Well, Your Honor, again, to return sort of to my first point, and I do think it is important, is that that is not alleged in the complaint. When the complaint was filed, NVLSP's allegations, and the truth is, had no idea if these decisions would be available again, or when, or if, or in what form. We have since learned, as a result of this case, that the department has its own reasons that it wants to explain why it took them down, and why it's putting them back at the rate it's putting them back. Were they really the department's own reasons? I thought it was under a statutory directive to redact sensitive private information. And then it's caught between two obviously desirable goals. One is to make the full information available to the public. But on the other hand, when you're talking about the discharge from military service, and whether one has a honorable discharge, or general discharge, or I think there are five different classification levels, it's hard for me to think of anything that's more sensitive than that, because particularly if it's something other than an honorable discharge, any future employer would want to know. And I mean, this gets to the point of where something could really compromise a service member's life prospects in a very serious way, and Congress at least took that into account and said that they didn't want very personal and private information out there. So in complying with this dual mandate, the agency wants to move with real care, because I could see it being sued, if inadvertently, personal and private information of an embarrassing sort or a questionable sort or disputable sort was made public, I can see a flurry of lawsuits resulting from that, because that just seems to me I'm very sensitive stuff. Somebody could, there could be information about post traumatic stress problems, information about don't ask, don't tell information about alleged sexual assaults, and that would cover the waterfront. And so, it just seems to me that the agency was not only right to proceed with some care, but it was obligated by both statute and regulation to do so. Judge Wilkinson, if I may, I have a variety of responses to that I hope will alleviate some of those concerns. The first is that if the LSP fully agrees that it's important to have this information redacted, but I want to be clear that the redaction obligation is not as broad as sort of laid out in your question. They're redacting personally identifying information, so we're talking about people's names, their social security numbers, very sensitive information, but nothing that would imply the discretion to redact things that Your Honor was describing where maybe they feel like something is too sensitive or not sensitive enough. They're limited to sort of core PII redactions, and so we see that as just another sort of ministerial requirement, and it's a duty they owe to veterans. And it's very important, Your Honor, from our perspective, given the fact that this case arises to the court on a motion to dismiss, that the court look at the framing and the allegations in the complaint with respect to redactions. Let me ask you about that. I thought it was the record was developed because there was a motion for a preliminary injunction, and in considering the motion for a preliminary injunction, which included a record, and which the court can consider, it concluded that there was no standing, number one, based on the record before the court, and number two, there was no final agency action, therefore no jurisdiction to handle it, and the court relied on both prongs based on the record. We're not under a 12B6 failure to state a claim. We're talking about standing, which is a court decision to make, and jurisdiction, which is a court decision to make. Judge Niemeyer, the court can look at anything in the record to support those things. Judge Niemeyer, that's not what this court said in the Wikimedia Foundation as it laid out the standard of review applicable to standing, and then second is that I disagree with your honor's characterization of what the district court did here. The district court addressed both the preliminary injunction and the motion to dismiss in the same order, but the court put blinkers on when it came to all of NVLSP's evidence in the record in addressing standing, if that is what it did. For example, if the court looked at JA47 paragraphs 10 and 11, NVLSP pointed out a specific instance where it was unable to carry out its projects with its partners as a result of the government's actions in this case, so to the extent that you can argue that on the standing issue, my whole comment is that you're treating this like a 12B6 where we have specified rules. This is a challenge to standing, your standing, and I think you make some valid points on the standing issue, but the court decided that you didn't have standing, and the court also decided that if it was wrong on that, it nonetheless had no jurisdiction to rule, and it based that on the fact that you were challenging the agency's efforts to fulfill its responsibilities, and that kind of a challenge is not challengeable under the APA. Judge Niemeyer, if I... District court did. That's what the district court said. Now, if the district court didn't consider something, you can argue that, but the holding of the district court was those two things. Judge Niemeyer, respectfully, we disagree with that framing of the district court's opinion. If you look at the court's order, it just addresses the motion to dismiss. It cites the motion to dismiss standard of review itself and its analysis, and at the very end, it says it's not addressing the preliminary injunction at all because it lacks jurisdiction, and this court has made very clear in Wikimedia Foundation that there are different rules that apply to a Rule 12B1 standing motion or at any other sort of jurisdictional issue depending on the defendants have argued it, and here we think that the proper approach is to look at this case on the facts of the complaint since it was a motion to dismiss that was granted, and we did not appeal the denial of the preliminary injunction. Mr. McGuire, this is Judge Diaz. Sorry to interrupt, but just following up on Judge Niemeyer's question, I get your point, for example, that if the agency in this case, if the facts had been, as you allege initially, that the agency simply had failed or advocated in its obligation to set up this virtual reading room, that that would amount to a discrete agency action, but I don't think that we should put blinders on to the reality. In fact, I suppose even absent an allegation and a complaint that we could take judicial notice of the fact, and of course, it's in the record because of the preliminary injunction, proceedings that the agency has begun to comply with its obligations to put together this virtual reading room. It's just not doing it as quickly as you and your agency colleagues and the people you serve would like, and that's understandable, but are you saying that we simply, we just have to turn a blind eye to that, that in fact the agency has acted? Judge Diaz, my first order answer would be that the better approach to this case because of the motion to dismiss is yes, because it invites the government to come in and do exactly what it did here, which is instead of answering the complaint, we could have moved to summary judgment and they could have made clear that this is an unreasonable delay case. We could have tested the veracity of some of these assertions that the government is making. Instead, they put it in through declarations and around a PI and then relied on it in a motion to dismiss to get facts in the record. My second order. When you clear all that away, the basic complaint remains dissatisfaction with the pace of compliance. I mean, they've apparently 138,000 of the 245,000 decisions have been posted. So there is an effort to comply going on. It's just not proceeding at the pace that you would find desirable. And there must be hundreds of agencies around Washington, hundreds of federal agencies that are not proceeding as quickly to comply with a statutory mandate as the recipients of that information or as the beneficiaries of the beneficiaries of the statutory mandate will almost inevitably, in the nature of things, be frustrated with the pace that the government is moving. But I wonder if there isn't a real separation of powers problem at the heart of all this. And that is what you're urging us to do is to jump right into the middle of the agency's compliance efforts and say, this is not going fast enough, or you're proceeding to do this in the form of deadlines and the rest. In other words, there are all kinds of landmines to this and the upshot of it would be a serious infraction of the separation of powers because we would be of the performance of an administrative function and essentially an executive branch function. And all of the courts that I've read on this decision about what is a final agency action under the APA, they all envision something far less open ended, don't they, than what you're inviting the court to do. I mean, Judge Diaz gave an excellent example at the beginning of the argument about whether the agency was saying, well, we're just not going to my question is, you're asking us really to overtake or to assume the general programmatic functions of the agency. And that gives me a real problem from a separation of powers point of view. Judge Wilkinson, I have a couple of responses. I'm going to try to boil them down quickly into one legal and one factual, if I may, since I see that my time has expired. On the broader point, I'm going to answer this question on the assumption that the court is going to look beyond the four corners of the complaint, despite the motion to dismiss posture. On the legal side of it, Your Honor, I think the answer to your question is if you perceive a separation of powers concern about overseeing agencies and how quickly they do undertake actions, the APA explicitly textually provides for that cause of action for unreasonable delay. The D.C. Circuit has been doing this for the last 30 years. The track factors were briefed below related to what constitutes an unreasonable delay. And it is, in fact, a rule of reason test that courts routinely apply to decide. That may be an unreasonable delay for a discreet agency action. But what you're talking about is unreasonable delay across the breadth of a court seeking an individualized piece of information or whatever. There can be maybe a place for an unreasonable delay action there. But the unreasonable delay question that you posed is still subject to the final agency decision requirement. And if there's no final, it's the final agency action requirement that separates an individual claim for an answer from programmatic supervision. Judge Wilkinson, I couldn't agree with you more on that. But there is nothing more discreet or limited of an agency action than a publication requirement. That's all that we're talking about. We're not talking about what goes into the decisions. We're not talking about how quickly they render the decisions. We're not talking about anything except for they have decided a case and they have a statutory mandate to publish that decision. I thought the record shows that they did not make a decision to deny that responsibility or to carry out that obligation. What they basically are saying is they have this dual duty to publish and to scrub the decisions of personal information and that they have taken down the decisions to scrub them and put them back up. And they're now about halfway done and they're continuing to do it. They're not denying it. They're just carrying out their functions. And your challenge is while they're doing that, they're denying you information. But that's a challenge to the performance of the program, it seems to me. Judge Niemeyer, to the extent that we're going to look at what they have done since the complaint was filed, that would be the unreasonable delay side of the challenge that they took down 245,000 decisions. If we look at what they have now put in the record for redaction related reasons, what the district court should have done is gone forward and said, okay, well, you have multiple agency actions going on here. Have they been unreasonable in delaying how long it takes them to publish the cases? The point that Judge Wilkinson was making, I believe, if I understood it correctly, is let's grant you all of that. They were unreasonable in their delay. They did not do it in the best way. They took down all the decisions in a group and are putting them back and it's taking way too long. And in the meantime, you're being denied the comes down to criticizing the agency for the way it's managing the program. The agency has never said, as far as I can see, that you're not entitled to that information. They basically said, we're trying it in their own clumsy way. And that's your allegation. And maybe they are clumsy. I mean, it sounds to me like it's taking a long time to get that stuff back up. But their response is they're scrubbing the decisions for the personal ID information and so forth. But the bottom line is I have not seen anywhere that they have denied the information or rebutted the obligation imposed on them by statute and regulation. Judge Niemeyer, so under those facts, at least as I understand your question, is if we just posit that they've unreasonably delayed, there is sort of an implicit, what is the remedy piece to your question, right? Exactly. That's a legitimate point to argue. What is the remedy? But the question is first to find out what's at stake. And I think what's at stake is your general allegations and the allegations in the complaint and in your preliminary injunction and in your affidavits is that they are not performing sufficiently adequately to carry out what they're supposed to do. But that's a lot different from them saying we're not going to do it. What they're saying is we are trying to do it and you're saying you're doing it pretty badly and the courts have to step in because the delay is arbitrary and it's way beyond what is reasonable. If that's the point, then we have to ask the question is what is our remedy? What's our role? Do we manage agency's performance at any time? Judge Niemeyer, yes. So the way I started the argument, I'm sorry if I didn't do a very good job with this, is we think we alleged box one, they didn't do anything at all. So we thought it was clearer that way. If the court wants to look at the... But that's okay too. I mean, even if you allege they didn't do anything at all, they haven't denied the responsibility. They haven't denied your specific request for any information. They claim that you can get it by an alternative method and that's disputed. But my question to you is really, doesn't all of this go to a challenge to the agency's carrying out of its obligations? It's not denying those obligations, it's carrying them out inadequately according to your allocations. And you may be right on that. Judge Niemeyer, on the facts as they came out in the preliminary injunction, that is where the case is heading. But that is... I want to be clear, that's cognizable under the APA as an unreasonable delay claim. And the remedy side, to the extent the court is like, okay, well, that's true. What is the remedy for that? Is the court can enter an injunction that says you have to do it in a reasonable amount of time if we prevail. We may lose on the merits of the track claim, right? Well, you have to go back to the first question. The unreasonable delay is unreasonable delay in rendering a decision following a decision-making process. And the Supreme Court has pointed out that that is reviewable. But reviewing the ongoing performance, even though it is delaying, I mean, we get a lot of these cases involving Medicaid, which is, I think, 18 years delayed right now. It's horrendous. We've passed that on to Congress and Congress has accepted the responsibility and they're trying to do something there. But here, the delay is still pretty serious as you allege it. And you may legitimately have criticism, but the question is, this is not a delay such as to deny a decision which is owed by them. This is a performance of an obligation to post these things and to put them in some kind of searchable order. And they're in the process of doing that. They're not denying it at all. Judge Niemeyer, respectfully, the length of the delay is what we would say constitutes the denial. And I really do want to press on this factual point that I've had at the tip of my tongue. So January 2nd, no decisions are available. By the time briefing concluded in this court, they had 138,000 odd decisions available. It's been five and a half to six months since then. They have only published 30,000. So the reason why this case is so critically important and the reason why even an injunction is a remedy that says you must do it in a reasonable time is so critically important is the agency has made clear it is not paying attention to this issue absent judicial, at least a case going on. I mean, their actions in this case have made clear that they are not going to do it absent the court. Maybe we should delay our decision and then they'll get theirs done. If that works, Your Honor. But my point is this is why an unreasonable delay claim is cognizable. And I understand from this court's precedent, from Judge Wilkinson's questions and your own, that it's an uncomfortable place to be overseeing the agency's actions and how close do you get? Our position is it's just so premature. This, all we're asking is to go forward, get the record in the case. The government can make all of these merits arguments and we'll just see what happens. And they may prevail or they may not. But the court had jurisdiction to hear it. That's our only point, Your Honors. And thank you for letting me go over my time. Um, either of you all have any further questions of Mr. McGuire here? No, I'm fine. Thank you. I don't. Thank you. I do not. Thank you. Um, let's hear from Ms. Wetzler. Good morning, Your Honors. Lauren Wetzler, Assisting United States Attorney on behalf of the defendants. In April of 2019, the Department of Defense discovered potential personally identifiable information or PII in decisions posted on its electronic reading room website and began the labor intensive process of reviewing, redacting and reposting more than 200,000 board decisions from the past 24 years. The process of administering a sprawling website database is a complex, expansive agency operation. It is not a discrete circumscribed decision. And as a result, it is not an agency action over which this court has jurisdiction under the Administrative Procedures Act, just as this court held in City of New York versus Department of Defense. Because this court need not reach the question of standing if it finds just as the district court did, that it lacks jurisdiction under the APA. I'll start by focusing on the agency action question where this court just left off. The Supreme Court and this court have made clear that the hallmark of a justiciable APA claim is a challenge to a discrete and broad programmatic attacks like the one in this case are impermissible. Decisions like issuing a permit or denying a benefit or publishing a rule or granting a patent or failing to make those decisions are cognizable agency actions. Administering a website, including reviewing, redacting and republishing decisions and making those decisions searchable is not a discrete or versus DOD is clear on this point and controls this case. So I thought as well that the SUWA decision of the Supreme Court was very much on point here where they were, the Supreme Court made a point of saying that general deficiencies in compliance, lack of specificity for final agency action. And the point is that it's to keep the final agency action from being completely eviscerated because there's simply no end to, I'm no fan of the administrative state, but there's no end to deficiencies in agency compliance. And I don't like it. Judge Niemeyer referenced the in Medicare and disability rulings and just all kinds of things, the agencies are behind schedule. And a lot of times it may be their fault, but in a lot of times it's not. The deficiencies in agencies lack the appropriations or they may have an insufficient staff or they may be under unfunded mandates to do this and that. And it was a favorite strategy of the legislative branch to take the political credit for these lofty sounding mandates and then to deny the agencies the resources to carry them out effectively. And if we recognize claims like this, we run the risk of holding agencies accountable for things that are not their fault. So I just think that's what the Supreme Court recognized in SUWA is that this is a real can of worms we could get into. And all the cases are very, very solicitous of this final agency action and having it represent something discreet. I mean, the courts have been good about safeguarding it because of the separation of powers concerns. And also the altogether legitimate concern is that our dockets would be overwhelmed if general programmatic attacks were allowed. So that's what we're up against here. One factual question I wanted to ask you, what kinds of, you're under this dual mandate here, what kinds of personal information are you redacting? Mr. McGuire suggested that, oh, this was a much more of a cut and dry kind of function that all you were, all you really had to do is to redact the individual's name. And that's, you know, very mechanical and it should be accomplished quickly and easily. I wasn't actually sure of that. I wondered whether it referenced whether the mandate from Congress about redacting personal identification information, does that extend to particular instances of malfeasance, sexual assault, or post-traumatic syndrome, or those kind of things that could inflict members of our armed services. What is it exactly that you're redacting? Yes, your honor, on that specific point, I believe Mr. McGuire was generally correct that what's at issue here when we refer to personally identifiable information is things like names, social security numbers, dates of birth, things that would identify individuals. There are other statutory provisions that call for redacting things like sexual assault history. So those are dealt with in some other statutory provisions, but the specific mandate in 10 USC 1552A5 having to do with personally identifiable information does refer to information that would identify a particular individual. What if the text of a decision said that the commanding officer of platoon 16 on March 15th did this, would that have to be removed? Your honor, I apologize, I don't know the answer to that question as to how that would, whether that would be considered something that is personally identifiable information. I mean, it would be pointing to a particular person. Yes, I understand your honor's point there. Okay, so what I'm concerned about, I guess, is that a description of an incident, be it an alleged sexual assault or some kind of post-traumatic syndrome, if you describe the incident in enough detail, it could be traced to a particular person or particularly individual, even if that individual's name was not given or social security number was not provided. Is that a problem in the administration of this? Your honor, certainly the DOD takes very seriously the need to carry out this mandate and wants to be very careful in ensuring that veterans are treated with the utmost privacy. So it wants to be very cautious and very careful that the veterans are protected, and it wants to take very seriously as it goes through this process and make sure that it gets it right. With respect to your honor's prior comments about all of the reasons that this court and the Supreme Court in Norton versus SUWA has been careful to enforce the agency action requirement and to preclude challenges to the performance of programs, I agree wholeheartedly with your honor's comments, especially as they pertain to concerns about separation of powers. And your honor's comments are exactly why the court should affirm here. This is going to Judge Diaz. So is there any limit to an agency's sort of public stance of, yes, we're on it with respect to this database, for example, but yet doing little or nothing in practice? Is there any role for a court in that kind of a case? Your colleague on the other side seems to suggest that DC Circuit, which handles these kinds of agency cases all the time, routinely steps in in circumstances such as the one I've described, where there's just an extreme dereliction of duty on the part of the agency. So I'm not suggesting that that's the case here, but let's say two years from now, we're still looking at the same number of opinions in that database. Is there any role for a court in a circumstance like that? Your honor, a few points on that question. And I know your honor is referring to the Sierra Club decision that my closing counsel has relied on extensively. That decision predates Norton versus SUWA. It also predates City of New York. More importantly, though, what the court said there was that when you have agency recalcitrance that amounts to an abdication of statutory responsibility, in that circumstance, you may end up in a situation where the agency's abdication is so significant that it amounts to a discreet enough action that it could be reviewable. We're not disputing that in the face of something so severe that an agency has completely abdicated its responsibility, that perhaps there could be that is so far removed from the situation we have here that it would be completely speculative for me to try to come up with that situation and draw that line in this case and for the court to do so. DoD has been operating this electronic reading room website for 15 years before it had to take it down. And since 2019 has been engaged in step-by-step restoring the website. At the time we filed our brief, there were 138,000 decisions, I believe, that had been restored. As of today, that number is up to 169,000. The agency would have loved to have been able to report an even higher number at the time of this argument. Unfortunately, COVID and other factors, personnel factors, got in the way. But we are already up to 169,000 decisions that have been restored. There is still also the possibility of gaining access to additional decisions on an ad hoc basis by availing oneself of the process that has been available all along to request decisions that's available on the face of the website. And so this is anything but a case of abdication of statutory responsibility. This is a case of the agency doing its best. Ms. Wetzler, so with respect to that sort of option to procure decisions on an individual basis, maybe the answer is you're not even obligated to do that. The agency isn't obligated to do that so long as they're moving steadily to replace the decisions. But your colleague on the other side, I think, would suggest that that may work well for an individual who might be seeking a particular decision. But in the line of work that they're in, where they're doing advocacy work for clients, that kind of ad hoc option just doesn't work very well. And it's the availability of the reading room with the search function that really makes the difference. So that's more of a comment, I guess, than a question. But you can respond to that if you have a response. Your Honor, I think that would take us into the question more of standing. So I can leave the question of agency action if the court has no other questions on that. I think I would ask the court to, the court can affirm on that ground solely it need not reach the question of standing. And I think City of New York and SUWA compel an affirmance on that ground. But to the question of standing, the Dreher case is, I think the parties agree, is the case that would govern the standing inquiry. And the second question there is whether the denial of the information creates a real harm with an adverse effect. And what this court emphasized in that case is whether the plaintiff is suffering the type of harm that Congress intended to prevent by requiring the disclosure. And we would argue that whether NVLSP as an organization has access broadly to every decision it wants does not go, does not speak to the question of whether of the type of harm that the court was, excuse me, that Congress was intending to that that was a concern about whether service members themselves were able to defend themselves and to bring the types of cases they wanted before these boards. And that whether this organization is able to carry out its purpose, that the general purpose is not under Fourth Circuit law adequate to suffice to establish standing. And that is a proposition that this case. Ms. Wetzler, I mean, the whole reason for being for this organization is to advocate on behalf of veterans. And if that advocacy is made more difficult, more expensive, more cumbersome as a result of an inability to access the databases that the agency has historically relied on, I don't see how that doesn't amount to the sort of concrete injury that our cases and more recent Supreme Court cases seem to suggest is enough. I think, you know, the problem here, as we see it, is that the harm that Congress was intending to prevent here was the harm to service members, and specifically by obtaining information, and that the harm to this organization as they have it is not the harm that was intended and that DREA would support. So, for example, if they had to turn away, Ms. Wetzler, if they had to turn away clients simply because it's taking so long because of the inefficient way in which they have to do research on cases that they just simply don't have the resources to take on additional clients as a result of this, and they lose funding, maybe their funding is tied to a quantitative number of clients that they can successfully process. I mean, these are all obviously at the 12B6 stage, and standing may allow for expansion of the record somewhat, but if in fact all of that are consequences that flow as a result of the denial of this access, isn't that enough? Your Honor, the problem here was that the plaintiff did not allege that those were the consequences here in their complaint, so they wanted us to treat standing as a facial matter, and the allegations that the plaintiff put forward did not specifically allege that those things were true, and so, you know, we've had some discussion in this argument about the question of going beyond, certainly for purposes of the APA jurisdictional argument, there's no question that the court may go beyond the record to consider the 12B1 argument there. Plaintiffs seem to want to consider the standing argument as a facial matter, and there the court looks to the, under those circumstances, the court would look at the face of the complaint where the plaintiff didn't identify any specific veterans or service members whose cases it wasn't able to evaluate or pursue, and so for that reason, we didn't, we don't believe that the that the plaintiff did adequately allege the kinds of things Your Honor just identified. If the court has no further questions, we would ask that the court affirm the decision of the district court and specifically find that the plaintiff is seeking to improve the agency's of a website, but that is not the function of the APA, and as a result, there is no agency action over which this court has jurisdiction. All right, thank you very much, Ms. Wetzler. We appreciate your argument, and Mr. McGuire, you've reserved some time for rebuttal, and we'd be happy to hear from you. Thank you, Your Honors. A few quick points. We're having mostly, it seems like, a merits argument to me this morning about whether or not the agency has unreasonably delayed, and I guess my caution as we proceed into the rebuttal piece would be against that, and this is why I led my argument this morning with a focus on the complaint, that this case arises to the court on a very narrow set of allegations where the facts of the world have changed just because the case has now been around for more than a year, but several key factual points I want to highlight first. We're not talking about decisions issued yesterday by these boards. We're talking about decisions that in many instances could be nearly 20 or 30 years old that have been around for a long time, and that the boards have had plenty of time to review or redact, and this court asked several questions of my colleague on the other side for her to give examples, essentially to, you know, provide a basis to say that there is a lot of agency discretion in what gets published, and she would not answer that question that way for the court. She was, I think, correctly pointing out your comments, the comments you just made really heighten my concern with what you're asking because what you're saying, well, there are some of these decisions are have been out for too long, or some of these decisions have been unreasonably delayed, others maybe not. I mean, what are we supposed to do? Go through these decisions one by one and say this has been like you're sucking us into a role of supervision, and it would be periodic supervision about the way this whole program is run, and we can't go through one individual complaint after one another and say, well, in this case, you didn't redact enough information. In this other case, you redacted, you took too long to redact. In other words, I just, you know, I just feel like, you know, there's an undertow to this, and we're getting sucked into a more particularized view of the deficiencies of compliance. According to you, you would still have, you know, if we remanded this, you'd still have complaints, I think, about however this was carried out. The date for action might not suit you. What was redacted and what was not might not suit you. I mean, I can think of all kinds of subsidiary questions that would arise for the court, but we don't have a good vantage point for overseeing all this. We don't have the kind of expertise that in military service or in military records that the agency has. They have also an interest in making sure that their redactions are even-handed across a wide variety of decisions and everything. We don't have that at our disposal. So this is a question of agency expertise, to some extent, and agency familiarity, which brings about uniformity. And I just feel like I'm getting sucked in. Do you understand why this is troubling me? It's not your aims, which I think are laudatory and, you know, if it were left up to me, I'd like to see these decisions available sooner rather than later. And your organization has a, you know, has a wonderful mission in assisting veterans with getting information in relation to their military records. It's a wonderful mission. But I just feel like I'm being swept into something and being pushed into something that's over my head. This is my problem. Judge Wilkinson, I hear you loud and clear, and if I may try in a couple of parts to swash some of those concerns as far as I'm able. The first is that we view Congress as having thrust the court into this because there is an under the APA. And any time you have an argument about what is reasonable or not, it is always going to involve the sort of superintendent views of is that okay, is that not okay, how long does it take? That's why the D.C. Circuit, which is routinely seen as the test for this, is effectively a rule of reason test. But I would really encourage the court to take a step back from worrying about that test at this stage. Because all, and if you look at our complaint, Judge Wilkinson, I think in fairness, we have really tried to avoid having this seen the way your honor has characterized it as a full-scale programmatic attack about everything the agency is or isn't doing with this. Because what NVLSP came forward and alleged is there is an explicit statutory regulatory directive command to publish these decisions on a centralized internet website. And the DOD's own regulation says, and I'll just quote it to you, The problem is that the agency is caught between two, it's under a dual mandate. It's under, in one way, there's a tension between the mandates. Because on the one hand, Congress is saying, do this, make this available. And then on the other hand, Congress is saying, yes, but only make it available under certain conditions where private information is redacted. So, you know, you have, there has to be some consideration for the fact that this agency is caught in this tension and wants to satisfy both parties. And, you know, it doesn't, if it somehow made available very personal and private information that led to the identity of a particular individual and compromise that individual's prospects in life, there's another lawsuit there. So it has to, they're trying to navigate a very difficult course. That's all I'm, that's all I'm saying. Judge Wilkinson, I fully appreciate that. And so does my client. And that's why we've, in every brief we've filed in this case, acknowledged that redaction is important. But if I can try again with another quote, just from the agency itself about, you know, it's not the court trying to thrust them out there faster than they would otherwise be. And their regulation that they have never repealed, this is 32 CFR against 70.8L. They say, quote, they'll make the decisions, quote, shall be made available for public inspection and copying promptly after a notice of final decision is sent to the applicant. The agency itself has directed that it'll do it promptly. So the idea that they need an eternity for years, at this point, we're now years behind for more recent decisions, none of which have been posted that I'm aware of, is just not true in the agency's own view. But all we're saying to the court at this stage is we have alleged as discreet an agency action as possible, which is why below the department argued that this was an agency action because it was so non-substantive, that a publication requirement was so ministerial that it wasn't actionable under the APA. They jettisoned that before this court, but that was their one of their initial arguments. And we're saying that the court shouldn't shut the courthouse doors on a jurisdictional argument to that type of ministerial discreet action. We should get to go to the merits where maybe we lose for all of the good reasons your honor is pointing out about superintending agencies. But those are merits arguments, and my client should be allowed to test the veracity of what the department is claiming. The final agency action is a jurisdictional argument, and it's best I think for jurisdictional arguments to be resolved sooner rather than later so that we're not plunging into a case over which we have no jurisdiction. And I just come back and say, when you read over the broad swath of cases dealing with final agency actions, the courts are very solicitous of this requirement. But at any rate, I think your time has expired. Do you have one final concluding statement you wish to make? Judge Wilkinson, all that we would offer is that a lot of this is trying to address merits concerns that I fully appreciate, and we think that the court should limit the jurisdictional analysis to the text of the APA as we suggested and address the merits later on. Thank you very much. All right. Well, we thank you very much. We appreciated both your argument and Ms. Wetzler's argument.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz